IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES M. SWEENEY; STEVEN KARPOWICZ, MORRIE LAPHEN, and INTERNATIONAL UNION of OPERATING ENGINEERS, LOCAL 150, AFL-CIO ,<br><br>Plaintiffs,<br><br>v.<br><br>ILLINOIS MUNICIPAL RETIREMENT FUND, NATALIE COPPER, in her official capacity as President of the Illinois Municipal Retirement Fund; GWEN HENRY, Executive Trustee of the Illinois Municipal Retirement Fund; TOM KUEHNE, Executive Trustee of the Illinois Municipal Retirement Fund; DAVID MILLER, Executive Trustee of the Illinois Municipal Retirement Fund; SUE STANISH, Executive Trustee of the Illinois Municipal Retirement Fund; SHARON U. THOMPSON, Annuitant Trustee of the Illinois Municipal Retirement Fund; ALEX WALLACE, JR., Employee Trustee of the Illinois Municipal Retirement Fund; and TRUDY WILLIAMS, Employee Trustee of the Illinois Municipal Retirement Fund,<br><br>Defendants. | Case No. 18 C 1410<br><br>Judge Robert W. Gettleman |

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs James M. Sweeney; Steve Karpowicz, Morrie Laphen and the International Union of Operating Engineers, Local 150, AFL-CIO ("Local 150") have brought a three count second amended complaint ("complaint") against defendants Illinois Municipal Retirement Fund ("IMRF"); Natalie Copper, in her official capacity as President of the Illinois Municipal Retirement Fund, as well as the IMRF's Executive Trustees Gwen Henry, Tom Kuehne, David

Miller, and Sue Stanish. Also named as defendants are Sharon U. Thompson, Annuitant Trustee of the IMRF and Alex Wallace, Jr. and Trudy Williams, Employee Trustees of the IMRF. All Trustees are sued in their official capacities.

Count I alleges a violation of plaintiffs' free speech rights under the First Amendment. Count II alleges a violation of plaintiffs' right to freedom of association under the First Amendment. Count III alleges that the individual defendants have breached their fiduciary duties under 40 ILCS 5/1-101.2 and 5/1-109 to use the care, skill, prudence and diligence of a similarly situated prudent person when investing the IMRF's money. Defendants have moved to dismiss the complaint under both Fed. R. Civ. P. 12(b)(1) for lack of standing and 12(b)(6) for failure to state a claim. For the reasons discussed below, defendants' motion to dismiss is granted.

## BACKGROUND

Plaintiff Sweeney is President-Business Manager of Local 150, which is a labor organization with its primary office in Cook County, Illinois, that represents over 23,000 workers. Of those Illinois resident members, over 3,000 are subject to and participants in the IMRF. Plaintiff Sweeney is not a participant in the IMRF.

Plaintiff Karpowicz is a participant in the IMRF. He objects to the use by IMRF of his mandatory contribution and/or investment income for lobbying and/or other political purposes. Plaintiff Laphen is also a participant in the IMRF employed by the Village of Tinley Park, Illinois in the Public Works Department. Tinley Park is a contributing employer to the IMRF. Like Karpowicz, Laphen objects to the use by IMRF of contributions and/or investment income for lobbying and/or other political purposes.

2

The IMRF is a multi-employer public pension fund that administers a program of disability, retirement, and death benefits for employees of local governments in Illinois, excluding the City of Chicago and Cook County. It was created by the Illinois legislature. 40 ILCS 5/7-101. It consists of more than 410,000 members and approximately 3,000 participating units of local government.

The IMRF is funded by compelled member contributions, employer contributions and investment returns. Local governments are authorized by statute to levy taxes to pay their share of contributions. Employees contribute a percentage of their earnings. Those contributions are treated as tax deferred employer pick-up under the Internal Revenue Code.

By statute (40 ILCS 5/7-201), the IMRF's assets in excess of the amounts required for operation shall be invested. The IMRF has the power and duty to make investments, as it is authorized to determine the limitations on the amount of cash to be invested to maintain such cash balances as may be deemed advisable to meet current annuity, benefit and expense requirements, and invest the available cash within these limits and securities.

In 2016, the IMRF's investment portfolio consisted of fixed income, stocks, real estate, and alternative investments. The total value of the IMRF's 2016 portfolio was $36,364,300,000.00. The value of its stock holdings alone was $22,224,410,000.00, which amounted to 61.1% of the total value of the IMRF's holdings. The IMRF's portfolio included investments in AT&T, Exxon Mobile Corp., Pfizer, Inc., United Parcel Service, and Anheuser-Busch Companies, Inc.

The IMRF is a defined benefit plan, with its retirement annuities, death benefits, and disability benefits defined by law. Participants who retire are provided a set annuity based on

3

their creditable service and their final rate of earnings or final average salary, with annual non-compound increases after retirement. It is not a defined contribution plan where participants own and invest their own contributions. All funds received by the IMRF become IMRF property and are deposited in its name. 40 ILCS 5/7-210(a).

The IMRF Board's powers and duties are specified by statute, including the power and duty to "obtain by employment or by contract such additional actuarial services and such legal, medical, clerical, or other services as is required for the efficient administration of the fund." 40 ILCS 5/7-189. This grant of authority allows the board to secure services for lobbying efforts. The Trustees have a fiduciary relationship to the IMRF's members regarding investment of the fund's money and are governed by the "Prudent Man Rule." The Trustees must discharge their duties "solely in the interest of the participants and beneficiaries." 40 ILCS 5/1-109.

According to the complaint, many of the publicly traded companies in which IMRF has invested, including AT&T, Exxon Mobil, Pfizer, UPS and Anheuser-Busch, have served or serve on the American Legislative Exchange Council's ("ALEC") "private enterprise" advisory council and have provided or continue to provide financial support to ALEC, which is a 501(c)(3) non-profit organization that describes itself as "America's largest non-partisan, voluntary membership organization of state legislators dedicated to the principles of limited government, free markets and federalism." ALEC lobbies for the adoption of "model bills" focusing on issues including weakening labor unions and public pension funds, by increasing employee contributions, raising the retirement age and number of years of service required for vesting and, above all, moving from defined benefit to defined contribution plans. This change, according to plaintiffs, shifts the risk of shortfalls and funding to retirees themselves. In

4

addition, ALEC lobbies for the passage of state laws permitting municipal bankruptcy in an attempt to impair the retirement benefits promised to state and municipal pension participants and their beneficiaries.

## DISCUSSION

### I. Standing

Defendants first argue that plaintiffs lack standing to bring Counts I and II. Under Rule 12(b)(1), a court must dismiss any action for which it lacks subject matter jurisdiction. Like a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in plaintiffs' favor. Scanlan v. Eisenberg, 669 F.3d 838, 841 (7th Cir. 2012). Plaintiffs bear the burden, however, of establishing that all the elements necessary for jurisdiction, including standing, have been met. Id. at 841-42. In ruling on a Rule 12(b) motion the court may look beyond the allegations of the complaint and consider whatever evidence has been submitted on the issue of jurisdiction. Mutter v. Madigan, 2014 WL 562017, *3 (N.D. Ill. Feb. 13, 2014).

Article III of the Constitution limits federal jurisdiction to certain cases or controversies. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Article III standing has three elements: (1) the plaintiff must have suffered an injury in fact, and invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or eminent, not conjectural or hypothetical; (2) the injury must be fairly traceable to the challenged action of the defendant; and (3) it must be redressable by a favorable decision. Id. at 560-61.

Defendants first argue that plaintiffs have failed to allege facts sufficient to show that any of them have suffered an injury in fact. Plaintiffs' claims in Counts I and II are that they are

5

being compelled to subsidize private speech with which they disagree and that the IMRF's lobbying and investment in corporations' political causes with which they disagree infringes on their association right.

Neither Sweeney nor Local 150, however, is a participant in IMRF and neither has been compelled to contribute any money to the fund. As such, neither has suffered an injury in fact that affects them in a personal or individual way. Recognizing this, plaintiffs argue that Local 150 has associational standing. See Hunt v. Washington State Apple Advertising Comm'n., 432 U.S. 333, 343 (1977).

The general rule of standing is that an injured party "must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 499 (1992). This rule stems from concerns that third parties "will not adequately represent the individuals whose rights they seek to vindicate." Retired Chgo. Police Ass'n v. City of Chicago, 76 F.3d 856, 862 (7th Cir. 1996). The doctrine of associational standing is an exception. As stated in Hunt, 432 U.S. at 343:

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purposes; and (c) neither the claim asserted, nor the relief requested requires the participation of individual members in a lawsuit.

Defendants argue that Local 150 cannot establish the second requirement – that the interests it seeks to protect are germane to the organization's purpose. An organization fails to meet this prong "where there is a serious conflict of interest between the organization and its members." Retired Chgo Police Ass'n, 76 F.3d at 863 (citing Southwest Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n., 830 F.2d 1374, 1381 (7th Cir. 1987). Two types

of conflicts preclude associational standing. First, not relevant here, is when an association seeks standing to sue some of its members directly. The other arises "where the association's suit, if successful, would cause a direct detriment to the interests of some of its members and the litigation was not properly authorized." Id. at 864. This is because if successful, the litigation would actually harm some member's interest, creating a concern: (1) that the litigation is not germane to the association's purpose; and (2) that the association will not be fully committed to the litigation and, as a result, will not pursue it with the zealous advocacy necessary to be an adequate representative. Id. at 864-65. These concerns may be allayed if the litigation was properly authorized in accordance with the association's procedures. Id.

In the instant case, plaintiffs argue that the litigation is detrimental to some of Local 150's members. First, only 3,000 of approximately 23,000 members of Local 150 are members of IMRF, meaning 20,000 members have little interest in pursuing the litigation. Also, defendants are correct that if the litigation is successful, IMRF would essentially be required to use some sort of litmus test every time it invests its excess funds, as it is required to do by statute, to determine if any of its participants object to a certain company because of that company's political or social position. This would obviously cause a detriment to at least some of Local 150's membership.

Plaintiffs bear the burden of proof that they meet the required elements of standing. Lujan, 504 U.S. at 561. Plaintiffs have failed to show that associational standing is germane to Local 150's purpose. Nor have they offered evidence that Local 150 has properly authorized this action. Consequently, the court concludes that neither Local 150 nor Sweeney can assert associational standing.

Plaintiffs Karpowicz and Laphen are in an altogether different situation. They are both participants in the IMRF and are compelled by law to make mandatory contributions. They claim that their free speech and associational rights are injured when IMRF invests their money in companies that support ALEC and otherwise take political positions with which they disagree.

The complaint, relying on the Supreme Court's recent opinion in <u>Janus v. American Federation of State, County and Municipal Employees Council</u>, __ U.S. __, 138 S.Ct. 2448 (2018), alleges that "if it violates the First Amendment right of an individual to be compelled by his or her government to subsidize his or her private speech, then compelling a targeted group of IMRF participants to subsidize political speech and lobbying activities of corporations in which the IMRF invests violates the participants' First Amendment rights to speech and association." The complaint also alleges that these plaintiffs are forced to fund the IMRF's lobbying and/or political activities to which they object.

Defendants argue that these allegations are insufficient to demonstrate a concrete injury. <u>Janus</u> makes clear, however, that compelling a person to subsidize the speech of other private speakers violates the First Amendment. <u>Id</u>. at 2463-66. That is precisely what Karpowicz and Laphen allege. Consequently, the court concludes that they have alleged a concrete injury, causally connected to defendants' alleged activity and have standing.

## II. Failure to State a Claim

### A. Counts I and II

As noted, in Counts I and II plaintiffs allege that their First Amendment rights to free speech and association are being violated when they are compelled to contribute to IMRF, which then invests plaintiffs' contributions in companies that invest in ALEC and other lobbying groups with which plaintiffs disagree. They also object to IMRF using their contributed funds for lobbying, although they do not specify any particular lobbying or political activity taken with which they object.

Defendants have moved to dismiss both counts under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. A motion under Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion, the complaint must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint satisfies this standard when its factual allegations "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 549, 555-56 (2007). The complaint "must give enough details about the subject-matter of the case to present a story that holds together." Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010).

Defendants first argue that the complaint is simply too devoid of specific factual allegations to plausibly suggest that defendants have done anything wrong. The court rejects this argument. The complaint alleges that both plaintiffs are compelled by law to contribute to and participate in IMRF, that IMRF engages in political lobbying and invests in companies that

9

plaintiffs believe support positions with which they disagree and are detrimental to the fund. Nothing more is needed.

Next, defendants argue that neither count plausibly suggests that defendants have violated the First Amendment. "The First Amendment, made applicable to the states by the Fourteenth Amendment, forbids abridgement of the freedom of speech." Janus, 138 S.Ct. at 2463. The freedom of speech "'includes both the right to speak freely and the right to refrain from speaking at all.'" Id. (quoting Wooley v. Maynard, 430 U.S. 705, 714 (1977)). "Forcing free and independent individuals to endorse ideas they find objectionable is always demeaning, and for this reason, one of our landmark free speech cases said that a law commanding 'involuntary affirmation' of objected-to beliefs would require 'even more immediate and urgent grounds' than a law demanding silence." Id. at 2464 (quoting West Virginia Board of Education v. Barnette, 319 U.S. 624, 633 (1943)).

Compelling private persons to subsidize the speech of other private speakers raises similar First Amendment concerns. Id. And, because compelled subsidization of private speech "seriously impinges on First Amendment rights, it cannot be casually allowed." Id. The Court has identified different levels of scrutiny to be applied in different contexts. Id. For example, for claims of compulsory subsidization of commercial speech, the Court has applied an "exacting" scrutiny standard, which is somewhat less demanding than the "strict" scrutiny standard applied "outside the commercial sphere." Id.

In Janus, the court was faced with a claim by non-union municipal employees who by law, were compelled to pay "fair-share" fees to the union that represented the majority of employees in the bargaining unit. The plaintiffs claim that the union engaged in lobbying and

other political activity with which they disagreed, including the union's positions in collective bargaining. Under state law, only the union could bargain collectively, and individual employees could not be represented by another agent or negotiate directly with their employer. The court, without deciding which standard should apply, held that the state's extraction of agency fees (fair-share fees) for the union violates the First Amendment under even the exacting standard. Id. at 2459-60.

Plaintiffs characterize Janus as holding that the government cannot force a citizen to subsidize private speech with which a public employee disagrees. They then argue that Janus is "the mirror image of the instant case." The court disagrees with this characterization. In Janus, the state withheld a percentage of a public employee's pay. The withheld funds went to the union, a private entity. Thus, private citizens were forced to subsidize a private entity's private speech.

Like Janus, in the instant case, the state requires plaintiffs to contribute to IMRF. But unlike the union in Janus, the IMRF is not a private entity but, as defendants point out, a "body politic" established by state law. And, as defendants argue, a governmental entity has the right to engage in lobbying and otherwise "speak for itself." Pleasant Grove City, Utah v. Summum, 555 U.S. 460, 467 (2009). "The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." Id.

Thus, the key issue in the instant case is whose, if any, speech are plaintiffs being forced to subsidize. Defendants convincingly argue that their investments are not speech at all, but even if their investments could be considered speech, it is governmental speech. To get around the lack of restriction on governmental speech, plaintiffs argue that "the speech to which

11

Plaintiffs object is not governmental speech, but rather the speech of private corporations that subsidize the speech of ALEC, a private party." But, unlike in Janus, where the plaintiffs' funds went directly to the private union, in the instant case the funds go to the public IMRF. Plaintiffs' complaint is about IMRF's use of the funds to invest in companies that in turn support an organization to whose speech plaintiffs object. As such, despite plaintiffs' efforts to argue otherwise, it is IMRF's "speech"-- in the form of investment -- that plaintiffs challenge. And, as alleged, all IMRF does is purchase stock in publicly held private companies. Plaintiffs' "funds" are merely contributed to a fund that invests as a shareholder in those private companies that then support the organization about which plaintiffs complain. Thus, the "speech" that they really object to is two levels attenuated from the speech that they challenge, IMRF's use of their funds.

In this regard, Board of Regents of the University of Wisconsin System v. Southworth, 529 U.S. 2017 (2000), is more apposite to the instant case than Janus. In Southworth, the University of Wisconsin required students to pay a segregated activity fee that was used to support various campus services and extracurricular student activities. Registered Student Organizations ("RSOs") engaging in a number of diverse expressive activities were eligible to receive a portion of the fees, which were administered by the student government subject to University approval. The plaintiffs, then current and former students, sued the University alleging that the fee violated their First Amendment rights and that they should have the choice not to fund RSOs that engage in political and ideological expression offensive to their personal beliefs. The court held that the First Amendment permits a public University to charge its students an activity fee used to fund a program to facilitate extracurricular student speech if the program is "viewpoint neutral." Id. at 221.

In the instant case, the state compels plaintiffs to fund IMRF, which is designed to provide benefits to municipal workers. The IMRF, like the program in <u>Southworth</u>, is a legitimate mission. The requirement set by law that IMRF invest its excess funds prudently is an equally legitimate requirement. So long as that mandate is performed in a viewpoint neutral manner, under <u>Southworth</u>'s reasoning, it is allowed under the First Amendment. Because plaintiffs do not allege that defendants' investment strategy is not viewpoint neutral, Counts I and II fail to state a claim.

**B.  Count III**

In Count III, plaintiffs allege that the Trustee defendants have breached their fiduciary duty to invest "with the care, skill, prudence, and diligence of a similarly situated prudent person." To state a claim for breach of fiduciary duty, plaintiffs must allege that: (1) a fiduciary duty exists; (2) the duty was breached; and (3) injuries to plaintiffs proximately cause by the breach. Defendants have moved to dismiss Count III, arguing that plaintiffs have not alleged a breach or that any alleged breach caused any injury. The court agrees.

The IMRF Board's duties are defined by the Illinois Pension Code, 40 ILCS 5/1-109, which provides:

> A fiduciary with respect to a retirement system or pension fund established under this Code shall discharge his or her duties with respect to the retirement system or pension fund solely in the interest of the participants and beneficiaries and:
>
> (a) For the exclusive purpose of:
>
> (1) Providing benefits to participants and their beneficiaries; and
>
> (2) Defraying reasonable expenses of administering the retirement system or pension fund;

(b) With the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character with like aims;

(c) By diversifying the investments of the retirement system or pension fund so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(d) In accordance with the provisions of the Article of the Pension Code governing the retirement system or pension fund.

The Board's duties are owed to all participants in the pension fund, and one of its most important functions, "perhaps the most important function," is to "ensure adequate financial resources to cover the Board's obligations to pay current and future retirement . . . benefits." Marconi v. Chicago Heights Police Pension Bd., 225 Ill.2d 497, 544 (2006).

Plaintiffs argue that defendants have "invested imprudently by investing in companies that fund and/or are members of ALEC, which, plaintiffs' claim, lobbies for the adoption of model bills that would weaken public pension funds such as IMRF." As defendants note, however, nothing in the Pension Code even authorizes, much less requires, the Board to refuse to make otherwise financially prudent investments based on the views of the company in which it invests. Any such requirement would necessarily come from the Illinois legislature, which has the ability to specifically prohibit fiduciaries of specific government pension funds from investing in certain companies or areas for social or political reasons. See, e.g. 40 ILCS 5/1-110.6, .15, .16 (prohibiting investments in companies that contribute to Iran, the Sudan, or that boycott Israel). There is no specific prohibition for companies that invest in or support ALEC. And, as defendants also point out, in ERISA cases, which both parties agree the courts look to for guidance when interpreting the Illinois Pension Code, the "investment decisions of risk

14

averse fiduciaries should be based exclusively on economic merit." Medina v. Catholic Health Initiatives, 147 F.Supp. 3d 1190, 1205 (D. Colo. 2015).

The court also agrees that plaintiffs have failed to allege any injury as a result of defendants' allegedly imprudent investments. Plaintiffs argue that they have alleged that defendants "have breached their fiduciary duty to the Union plaintiffs by failing to exercise due diligence and monitor IMRF's investment manager prudently," and "particularly by investing in common stocks of corporations that support ALEC." These are mere conclusory allegations that do nothing to establish any injury to plaintiffs Karpowicz or Laphen. There is no claim that ALEC's activities have injured the IMRF in any way that has injured plaintiffs. Plaintiffs speculate that if ALEC is successful then IMRF will disappear. That, of course, is pure speculation, but even if true it does not necessarily mean that either plaintiff will suffer an injury. Plaintiffs' claims are far too speculative to support a claim for breach of fiduciary duty. Consequently, defendants' motion to dismiss Count III for failure to state a claim is granted.

## CONCLUSION

For the reasons described above, defendants' motion to dismiss [Doc. 46] is granted as to plaintiffs Sweeney and the International Union of Operating Engineers, Local 150, AFL-CIO for

lack of standing.  As to plaintiffs Karpowicz and Laphen, Counts I through III are dismissed for failure to state a claim.

**ENTER:     March 19, 2019**

_____
**Robert W. Gettleman
United States District Judge**